UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL HUTCHINSON, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )  1:12-cv-00321-JAW |
| | ) |
| JOSEPH PONTE, | ) |
| | ) |
|     Defendant | ) |

**RECOMMENDED DECISION
RE: § 2254 PETITION**

Michael Hutchinson, convicted of murder in April 2007 in the brutal slaying of a woman in her own home, has filed a petition in this Court pursuant to 28 U.S.C. § 2254 claiming two grounds of ineffective assistance of counsel. First, Hutchinson complains that his trial counsel was ineffective because of advice that his likely sentence, in the event of conviction, would be in the forty-year range. According to Hutchinson, trial counsel should have known under available Maine precedent, *i.e.*, State v. Bates, 2003 ME 67, 822 A.2d 1129, that a life sentence would likely be imposed. In August 2007, Hutchinson was in fact sentenced to imprisonment for life. Second, Hutchinson claims his attorney provided ineffective assistance of counsel because he failed to more actively pursue plea negotiations prior to trial, in spite of the fact that Hutchinson maintained his innocence and had expressed his unwillingness to entertain the possibility of a plea even in the forty-year range. The State concedes that Hutchinson's federal petition is timely and that he has fully exhausted all available post-conviction remedies in the state court. (Answer at 4, ¶¶ 9-10, ECF No. 3.) I now recommend that the Court deny Hutchinson's petition.

**FACTUAL BACKGROUND**

The facts giving rise to Hutchinson's conviction are set forth in State of Maine v. Hutchinson, 2009 ME 44, 969 A.2d 923.  The state's record furnished with its answer to the habeas petition does not contain any transcripts from the trial, nor are those transcripts necessary for the determination of the issues raised by the petition.  I therefore recount the facts as set forth by the Law Court in order to provide the necessary background.  According to the Law Court: "This case involves a brutal sexual assault and murder." Id. ¶ 2, 969 A.2d at 925.  The twelve-year-old daughter of the victim awoke in the home she shared with her mother to the sound of her mother screaming and knives clinking against each other.  She heard other sounds consistent with a struggle between her mother and an unknown male.  Eventually she left her bedroom and saw her mother's body on the floor.  None of the phones in the residence were working, so she went outside and began knocking on her neighbors' doors and eventually found someone to call the police. Id.

Investigators arrived at the victim's house to discover her body lying on the kitchen floor with blood observed in both kitchen and living room areas.  They also noticed some footprints had been left around the victim and in other areas.  The lead forensics investigator noticed that there were blood droplets that did not appear to come from the victim.  Blood samples were taken from different areas of the kitchen and living room, along with fiber samples from the carpet (with and without blood) and impressions of the footprints. Id. ¶ 3.  The murder occurred in May 1994 and more than twelve years later this forensic evidence would figure prominently at Hutchinson's trial.

"The medical examiner found that the victim had a fatal stab wound in the chest, approximately fifty stab wounds to her head and face, and additional superficial wounds on her

arms and wrists, which suggested she had been warding off an attack.  The examiner also observed tears and slight bleeding around the anus area, consistent with blunt force from a penis . . . .  Sperm cells were detected in the victim's anus, but nowhere else."  Id. ¶ 4.  The forensics expert indicated the sperm could have been deposited anywhere from minutes before death, up to four hours prior.  Id. ¶¶ 4-5.

The sperm and blood samples were subjected to forensic analysis by the FBI and some years later by the Maine State Police Crime Laboratory, both of which determined that the DNA in the sperm samples matched that found in the drops of blood on the victim's leg.  However, the DNA did not match samples from any of those persons whom the State suspected in the case.  The unidentified DNA samples thereafter remained catalogued in a state data base and the case remained unsolved for years.  Id. ¶ 5, 969 A.2d at 926.

In 2003, Michael Hutchinson pleaded guilty to a totally unrelated criminal threatening charge.  He was ordered to give a DNA sample pursuant to 25 M.R.S. § 1574(1), (5)(B), which requires that persons convicted of certain crimes provide a sample of their DNA.  "Hutchinson's sample was subsequently checked against the DNA samples in the state data base of unsolved forensic cases in Maine, and Hutchinson's profile came up as a match with the DNA samples taken from the body of the victim in this case."  Id. ¶ 6.  "Subsequently, police determined that Hutchinson had lived only a few blocks from the victim's home at the time of the murder, and that Hutchinson's parents had also lived nearby."  Id. ¶ 8.  They also ran new DNA tests which confirmed earlier results and obtained a foot impression from Hutchinson which matched the size of a footprint taken at the scene.  Id.

Hutchinson was indicted and charged with murder.  His pretrial motion to suppress the DNA evidence, based on the argument that the initial collection of his DNA sample pursuant to

3

the statute had been in violation of the federal and state constitutional guarantees against unreasonable searches and seizures, failed. The court upheld the DNA collection statute, finding it to be constitutional under the totality of the circumstances.

At trial Hutchinson testified in his own defense. Previously he had told law enforcement that he did not know the victim and never met her. He admitted during his trial testimony that he had actually met the victim about a year before her murder, that they had sex a couple of times before, and that she had invited him to come over on the day of her death. Hutchinson said he had consensual anal and vaginal intercourse with the victim, but that another person later entered the house, knocked him out, and stabbed the victim. Id. ¶ 11, 969 A.2d at 927. "Hutchinson further testified that his hand had been cut during his scuffle with this person. Hutchinson claimed that he did not come forward and tell the police what had happened because he was so ashamed that he had run from the house." Id. The jury found Hutchinson guilty. Id. ¶ 13.

## LEGAL STANDARDS

To succeed on a claim of ineffective assistance of counsel in the context of 28 U.S.C. § 2254 review, Hutchinson "must show both deficient performance by counsel and resulting prejudice." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The deficient performance aspect of the section 2254 burden requires Hutchinson to demonstrate that counsel's conduct in his case "fell below an objective standard of reasonableness." Id. (quoting Strickland, 466 U.S. at 688). For Hutchinson to satisfy the Strickland "prejudice" element, he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quoting Porter v. McCollum, 130 S. Ct. 447, 453 (2009) (per curiam)).

In this case, because the Maine Supreme Judicial Court denied a certificate of probable cause for an appeal of the post-conviction court's judgment, the final reasoned analysis of the state court on the claims of ineffective assistance of counsel is the May 23, 2012, decision of the state superior court justice. (Order, Hutchinson v. State of Maine, Docket No. CUMCD-CR-2010-06609, Record § C.) This section 2254 petition cannot be granted unless that state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-406 (2000).

By comparison, the "unreasonable application" clause of section 2254(d) applies when "the state court identifies the correct governing legal principle from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. It also applies when the state court "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id.

"[A]n unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. The import of this distinction is that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

5

state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. See also Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (emphasizing that the state court decision "must be 'objectively unreasonable'") (quoting Williams, 529 U.S. at 409).

The Antiterrorism and Effective Death Penalty Act of 1996 also sets out a separate and demanding standard applicable to review of a state court's factual findings. Pike v. Guarino, 492 F.3d 61, 68-70 (1st Cir. 2007). The state court's factual findings are "presumed to be correct," unless the petitioner can rebut the presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### DISCUSSION OF HUTCHINSON'S TWO CLAIMS

*Superior Court Justice's Factual Findings Regarding Post-conviction Review*

The Superior Court post-conviction review judge was also the trial court judge in this case. He conducted a state post-conviction review evidentiary hearing and made the following findings, all of which are supported by testimony during the approximately two-hour evidentiary hearing. (Post-Conviction Tr., Record § C.) The witnesses who testified at that hearing were Robert Andrews, Hutchinson's defense attorney at trial, Lisa Marchese, the state prosecutor, and Michael Hutchinson, the petitioner. Hutchinson was represented by counsel at the hearing and during the appeal period when he unsuccessfully sought a certificate of probable cause.

The Court found that Hutchinson consistently told Andrews a story similar to the narrative he presented at trial. He denied murdering the victim and never wavered in his insistence that the presence of his DNA at the scene could be fully explained because of his version of events. Although there was no copy of this letter in existence, the Court found that Andrews sent Hutchinson a letter in September 2006, months before trial, assessing the risks

6

Hutchinson faced. Andrews met personally with Hutchinson shortly thereafter in October 2006 to further discuss those risks. According to Andrews his risk analysis concluded that the chances of prevailing at trial were "very slim." (Tr. at 9:9.) Andrews told Hutchinson that if he were convicted after trial his sentence would likely fall within the 35-40 year range. However, his risk analysis included a comparative study of a list of cases which included the Foster Bates case where the defendant had received a life sentence. Hutchinson firmly told Andrews he was not going to plead guilty to a forty-year sentence.

Andrews did have several short conversations with the prosecutor on the subject of a plea bargain. Although Marchese does not recall specific discussions, according to Andrews she told him she did not think there could be a plea bargain that did not involve a sentence of at least sixty years. In any event no formal plea offer was ever made and the prosecutor understood that Hutchinson maintained his innocence and accepted no responsibility for the murder. The court found the record to be unclear whether or not Andrews ever communicated Marchese's sixty-year comment to Hutchinson, but that Andrews and Hutchinson had discussed a "de facto" life sentence. Although Hutchinson testified at the hearing that he would have accepted a sixty-year plea offer "as opposed to a life sentence," the Court found that statement to be based on hindsight. To the extent the testimony was offered to suggest that if the likelihood of a life sentence had been adequately explained to him prior to trial, Hutchinson would have opted for a sixty-year sentence pursuant to a plea bargain, the Court found the testimony was not credible. (Order at 5.) The Court based its credibility finding on the fact that Hutchinson consistently asserted his innocence and on the fact that he was 32 years old when indicted for the murder and "even factoring in good time he would have been approximately 82 years old at the end of a 60 year sentence." (Id. at 5-6.)

The Court characterized Andrews's "misjudgment" about the length of the potential sentence in the event of conviction as an issue he did not need to reach. (Id. at 8 n.6.) It was noted that attorneys have very disparate views about appropriate sentences. The Court concluded that even if the "misjudgment" fell below the standard that might have been expected of an ordinary fallible defense attorney, it would not change the outcome of his decision. The Court did recognize that the factual dispute surrounding whether or not there was a sexual assault involved in this case created a legal issue that had not been resolved by the Maine Law Court as of the time of the trial and that well might have been a factor in the length of sentence that would have been legally allowed.

*Misjudgment Regarding Potential Sentence Length*

There is no question but that Andrews badly missed the mark in advising Hutchinson about the likely sentence he would receive. That fact alone does not compel a finding of deficient performance. Some federal courts that have considered the issue of mistaken predictions regarding the length of sentence, even in the context of a guilty plea where the Sixth Amendment right to a jury trial has been waived, have concluded the "mere inaccurate predication of a sentence" does not demonstrate the deficiency component of an ineffective assistance of counsel claim. United States v. Martinez, 169 F.3d 1049, 1053 (7th Cir. 1999) (citations omitted). In the present case Andrews prepared and discussed with Hutchinson a risk analysis which included a list of prior murder cases and the sentences imposed. Included in that list was the Bates case, 2003 ME 67, which involved the death of a woman in her own apartment while her young son was present. Bates was convicted of murder and gross sexual assault in connection with the killing. The Court found on those facts that a sentence of life imprisonment was appropriate based upon the attendant circumstances, including sexual abuse, which the Court

8

had enumerated in State v. Shortsleeves, 580 A.2d 145, 149-150 (Me. 1990) as one of the factors warranting a life sentence.

Andrews explained that at the time of his risk analysis in the Fall of 2006 and even at the time of trial in April 2007, the Maine Law Court had not yet decided State v. Libby, 2007 ME 80, 926 A.2d 724 (decided July 5, 2007). (See Tr. at 17-18.) Libby involved the issue of whether the Supreme Court decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and their progeny, including at least one Maine case, State v. Schofield, 2005 ME 82, 895 A.2d 927, required that an aggravating factor, such as sexual abuse, be proven to the jury beyond a reasonable doubt. The Law Court concluded in Libby that it need not be so proven and that there was no error in the judge making that determination at the time of sentencing. In his direct appeal Hutchinson argued that even in the face of Libby, which involved the imposition of a forty-year sentence, under Shortsleeves the categorical factors that would allow the imposition of a life sentence were different and had to be proven to the jury beyond a reasonable doubt in order to avoid a Sixth Amendment violation. Hutchinson's argument did not prevail on direct appeal, State v. Hutchinson, 2009 ME 44, ¶¶ 35-38, 969 A.2d 923, 934. However, the post-conviction court specifically found that Andrews's advocacy on this position was not "unreasonable" and it could well have had a bearing on his assessment of the possible sentence that likely would be imposed. (Order at 8 n.6.) After all, sexual abuse was neither alleged nor proven beyond a reasonable doubt and Hutchinson adamantly maintained no sexual abuse had occurred.

Given the state of the record, there is no finding as to whether or not Andrews's mistaken belief regarding the likely sentence amounted to deficient performance. My opinion about whether Andrews met the performance prong of Strickland is irrelevant to this analysis. The

9

state court concluded that even if Andrews's performance was deficient, the prejudice prong had not been met. Had Andrews told Hutchinson his likely sentence would be 60 years, or even life in prison, Hutchinson still would have proceeded to trial. (Order at 8.) This finding was based upon the post-conviction judge's assessment of the credibility of Hutchinson's testimony about what he would or would not have done. That conclusion certainly is not an unreasonable application of the Strickland standard to the facts of this case.

*Failure to Actively Engage in Additional Plea Negotiations*

The record is clear that Andrews did not actively pursue plea negotiations and that no plea offer was ever forthcoming. The state post-conviction court was keenly aware of two recent United States Supreme Court cases that had addressed claims of ineffective assistance in the context of trial counsel's performance in connection with plea bargaining. See Missouri v. Frye, 132 S. Ct. 1399 (2012), and Lafler v. Cooper, 132 S. Ct. 1385 (2012). Ultimately the state court concluded that those cases were inapplicable to Hutchinson's case because no plea offer was ever made. (Order at 6.) Thus the issue for this Court becomes whether that conclusion was an unreasonable application of or contrary to the holdings of the United States Supreme Court.

Hutchinson's second ground is premised on the supposition that, if Andrews had performed adequately, Hutchinson would have received a plea offer from the State for a term of years short of life imprisonment and that he would have accepted that offer. But Hutchinson hasn't established that the State ever made a plea offer, or even that a plea offer was on the way, so his case differs from the Supreme Court cases in a marked fashion. And as the Supreme Court has made clear, "a defendant has no right to be offered a plea." Frye, 132 S. Ct. at 1410. Recently the Tenth Circuit rejected a challenge similar to Hutchinson's when it denied a certificate of appealability (COA) to a petitioner in the context of a Section 2255 motion brought

following a jury trial involving various drug and firearm charges. The Court noted that the petitioner's grounds were premised on the supposition that if counsel performed adequately the defendant would have received a plea offer. Relying on the language in Missouri v. Frye quoted above, the Tenth Circuit concluded that petitioner had failed to make a substantial showing of the denial of a constitutional right, because he had no right to a plea offer in the first instance. United States v. Garton, No. 12-8063, 2012 WL 5507240, 2012 U.S. App. Lexis 23377 (10th Cir. Nov. 14, 2012). See also United States v. Rendon-Martinez, No. 12-6175, 2012 WL 4458385, 2012 U.S. App. Lexis 20269 (10th Cir. Sept. 27, 2012) (denying COA following jury waived trial where petitioner failed to show that a plea offer was ever made); Pender v. United States, No. DKC 06-0083, 2012 WL 1078228, *3, 2012 U.S. Dist. Lexis 43729, *9 (D. Md. Mar. 29, 2012) ("Even if it is true that his counsel did not seek a plea agreement, his counsel's failure to seek or obtain a plea offer was not outside the 'range of competence' of criminal defense attorneys. . . . In general, a defense counsel does not ordinarily have a duty to initiate negotiations for a plea bargain.").

     I agree with the state post-conviction judge that the cited Supreme Court cases are not applicable to the facts of Hutchinson's case. The court's decision not to apply those cases to these facts was not an unreasonable application of those cases nor contrary to established Supreme Court precedent. As the state court concluded, Hutchinson's case required the application of the Strickland standard to the facts as the Court found them to be. When the court rejected the credibility of Hutchinson's statement that he would have accepted a sixty-year plea offer (with the benefit of hindsight), it inevitably led to the logical conclusion that Hutchinson would be unable to meet the prejudice prong of the Strickland analysis. I can find no reason in the record evidence to dispute that finding.

11

## CONCLUSION

Based upon the foregoing, I recommend that the Court deny Hutchinson's petition and summarily dismiss the petition. I further recommend that a certificate of appealability should not issue in the event Hutchinson files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

January 11, 2013                    /s/ Margaret J. Kravchuk
                                    U.S. Magistrate Judge